IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3004-FL

| | | |
|---|---|---|
| MICHAEL SCOTT PERKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PETER WHITE, GRAY FAULKNER, III, VANCE COUNTY BOARD OF COMMISSIONERS, and WESTERN SURETY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on defendants' unopposed motion for summary judgment (DE 62) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for adjudication.

**STATEMENT OF THE CASE**

On January 11, 2013, plaintiff filed this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff named Vance County Sheriff Peter White ("White"), Vance County Deputy Sheriff Gray Faulkner, III ("Faulkner"), the Vance County Board of Commissioners ("Board of County Commissioners") and Western Surety as defendants. Plaintiff alleged a claim for excessive force pursuant to the Fourteenth Amendment to the United States Constitution. Plaintiff also alleged a claim against Faulkner pursuant to 18 U.S.C. § 1519, and that defendants Faulkner and White committed perjury in the course of plaintiff's criminal proceedings. Finally, plaintiff alleged that the Board of County Commissioners failed to adequately train its employees and enacted policies which led to the alleged excessive force.

The court subsequently conducted a frivolity review of plaintiff's complaint. The court dismissed, as time-barred, plaintiff's claims arising out of the alleged August 11, 2008, excessive force incident, and plaintiff's claim that Faulkner and White failed to follow Vance County policies at that time. The court, additionally, dismissed without prejudice plaintiff's § 1519 claim and plaintiff's contention that Faulkner and White committed perjury in the course of plaintiff's criminal proceedings.

On August 12, 2013, plaintiff filed an unopposed motion for reconsideration. The court subsequently re-instated plaintiff's claims arising out of the alleged August 11, 2008, excessive force incident and his claim that Faulkner and White failed to follow Vance County policies. Because plaintiff did not challenge the court's dismissal of his claim pursuant to § 1519 or his allegations that Faulkner and White committed perjury, these claims remained dismissed.

On August 25, 2014, defendants Faulkner, White, the Board of County Commissioners, and Western Surety filed a motion for summary judgment pursuant to Rule 56, arguing that plaintiff is unable to establish a constitutional violation. Alternatively, these defendants asserted the affirmative defense of qualified immunity. In support of their motion for summary judgment, defendants attached an affidavit from Faulkner, a copy of the instant "incident/investigation report," and an excerpt from a deposition of plaintiff. Although plaintiff was granted three extensions of time, he did not respond to defendants' motion for summary judgment.

**STATEMENT OF THE FACTS**

Except where noted otherwise by the court, the undisputed facts are as follows. On August 11, 2008, defendant Faulkner was on duty and responded to a call requesting a sheriff's deputy to come to a Highway Patrol checkpoint located within the Vance County limits to pick up and

2

transport plaintiff to the Vance County Sheriff's Office because plaintiff had outstanding warrants for his arrest. (Faulkner Aff. ¶ 6.) Faulkner then transported plaintiff to the Vance County Sheriff's Office. (Id. ¶ 9.) Faulkner suspected that plaintiff was under the influence of an impairing substance. (Id. ¶ 12.)

After Faulkner completed paperwork and fingerprinting at the sheriff's office, Faulkner took plaintiff to the Vance County Magistrate's Office for service of the outstanding warrants and orders for arrest. (Id. ¶ 16; and DE 15, p. 1.) Magistrate Betty Leggett then set plaintiff's bail. (Faulkner Aff. ¶ 11.) Plaintiff disagreed with the amount of the bail set and called Magistrate Leggett "an ungrateful bitch." (Id. ¶ 11 and Attach. 2, p. 2.)

The parties dispute the events that next occurred. According to plaintiff, defendant Faulkner violently shoved plaintiff out of the doorway of the magistrate's office. (Mem. in Supp. of Compl. p. 2.) Then, upon entering the hallway leading to the parking area, defendant Faulkner reached across plaintiff from behind and sprayed pepper-spray into plaintiff's eyes. (Id. p. 3.) Faulkner then immediately pepper-sprayed plaintiff for a second time, and then pepper-sprayed plaintiff for a third time as plaintiff was getting into Faulkner's patrol vehicle. (Id.) Plaintiff states that he was not permitted to decontaminate until plaintiff reached the Vance County Jail, which was over 30 minutes after being pepper-sprayed. (Id.; DE 15, p. 1.) As a result, plaintiff "suffered excruciating pain, blindness, pain about the face, nose, [and] throat." (Id. p. 4.)

According to defendants' version of the post-bail events, plaintiff became upset when Magistrate Leggett set plaintiff's bail higher than plaintiff wanted. (Faulkner Aff. ¶ 11.) As Faulkner escorted plaintiff out of the magistrate's office, plaintiff stated that he was going to jail and told Faulkner to get his hands off of plaintiff. (Id. ¶ 13.) Faulkner then took hold of plaintiff's

3

elbow and attempted to guide plaintiff toward the door. (Id.) As Faulkner took plaintiff's elbow, plaintiff pulled away from Faulkner's grasp and rammed himself into the exit doors. (Id.) The magistrate office doors opened directly onto an unsecured outdoor parking lot, which connected directly to a nearby road. (Id. ¶ 10.)

As Faulkner attempted to maintain control of plaintiff, Faulkner sprayed a burst of pepper-spray toward plaintiff. (Id. ¶ 14.) When plaintiff turned his head away from the first burst of spray, Faulkner sprayed a second burst of pepper-spray. (Id.) Plaintiff does not dispute the fact that he turned his head was turned away from Faulkner when the first pepper-spray burst occurred. (Mem. in Supp. of Compl. p. 6.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

4

B.  Analysis

Defendants assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first examines whether defendants violated plaintiff's constitutional rights.

a.  Excessive Force

Petitioner was an arrestee at the time of the alleged excessive force. While "[t]he Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person," Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997) (citation omitted) (1989), the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." Riley, 115 F.3d at 1164, abrogated on other grounds by, Wilkins v. Gaddy, 559 U.S. 34 (2010). Rather, "excessive force claims of pretrial detainees [and arresttees] are governed by the Due Process Clause of the Fourteenth Amendment." Id. at 1166.

To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, plaintiff must show that defendants "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986). The proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320–21 (citation omitted)). When reviewing a claim

5

of excessive use of force under the Fourteenth Amendment, the Court should consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the extent of the injury inflicted, and 4) whether the force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically for the very purpose of causing harm. See Whitley, 475 U.S. at 321. The court notes that no particular extent of physical injury is required to establish an excessive force claim under the Fourteenth Amendment. Sawyer v. Asbury, 537 F. App'x 283, 290 (4th Cir. 2013) (citing Wilkins, 559 U.S. 34 (2010)).

Applying the Whitley factors set forth above, the record does not support plaintiff's excessive force claim. First, the court examines whether there was a need for force. Plaintiff acknowledges that he called the magistrate judge an "ungrateful bitch" after bail was set and that he turned away from Faulkner as he was exiting the magistrate's office. It is also undisputed that Faulkner shortly thereafter escorted plaintiff, restrained only in handcuffs, to an unsecured outdoor area with access to a nearby road. Further, although the parties dispute the nature and extent of the subsequent use of force, both versions of the incident involve plaintiff engaging in disruptive behavior while being transported from the magistrate's office. Disruptive behavior in a prison creates a security risk, which may warrant the use of force. See Landman v. Peyton, 370 F.2d 135, 138 n.2 (4th Cir. 1966) (stating that mace can be constitutionally used in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate"). Based upon the foregoing, it is reasonable under these circumstances for Faulkner to perceive that plaintiff was a security risk. See Graham v. Connor, 490 U.S. 386, 396 (1989) ("The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of

6

hindsight.") (internal quotation omitted). Plaintiff has presented no evidence to the contrary. Thus, the first Whitley factor weighs in favor of plaintiff.

The court next considers the second and third Whitley factors together–the relationship between the need and amount of force that was used and the extent of the injury inflicted. Generally, it is constitutional for law enforcement officers to use chemical munitions to compel obedience from a recalcitrant inmate. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996); Landman, 370 F.2d at 138 & n. 2; Tracy v. Freshwater, 623 F.3d 90, 97 (2d Cir. 2010) (finding that a police officer did not use excessive force in striking an arrestee with a metal flashlight, jumping on him, spraying him with pepper spray after he had been placed in handcuffs, and forcibly moving him from the ground to the police car). Further, it is not per se excessive force when a police officer fails to warn a suspect before deploying pepper spray. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003) ("The constitutional requirement that the use of force be reasonable includes no requirement to warn a violent felon-in circumstances like these-that the use of pepper spray is forthcoming.").

In this case, Faulkner admits that he deployed two pepper-spray bursts, the second being deployed only after Faulkner perceived that the first burst failed to make contact with plaintiff. (Faulkner Aff. ¶ 14.) Faulkner deployed the pepper-spray in order to control a detainee who Faulkner perceived as a safety risk and as potentially under the influence of an impairing substance. (Id. ¶¶ 12, 13.) Moreover, the record reflects that the force used was minor because, at most, plaintiff experienced temporary discomfort which lasted approximately thirty (30) minutes, until plaintiff was permitted to decontaminate upon arriving at the Vance County Jail. (See DE 15, p. 1.) Aside from his temporary discomfort, plaintiff has not presented any evidence to establish that he

7

suffered any injury. Based upon the *de minimis* nature of plaintiff's injury, as well as the lack of evidentiary support for plaintiff's allegations regarding the alleged incident, the court finds that plaintiff suffered no serious injury and that the relationship between the need for force and the force used was proportionate. Thus, the second and third Whitley factors weigh in favor of defendants.

Finally, the court turns to the fourth Whitley factor, whether the force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically for the very purpose of causing harm. To the extent that the allegations differ with regard to the alleged use of force incident, there is no evidence suggesting that defendant Faulkner applied force in a malicious, wanton, or sadistic manner aside from plaintiff's conclusory allegations which are not sufficient to support a claim. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Rather, defendant Faulkner's actions were reasonable considering the fact that Faulkner perceived plaintiff as impaired, and had witnessed plaintiff's inappropriate and disruptive behavior at the magistrate's office immediately prior to the alleged incident. See Graham, 490 U.S. at 396. Thus, the fourth Whitley factor also weighs in favor of defendants.

Based upon the foregoing, each of the Whitley factors weigh in favor of defendants, and plaintiff is unable to establish that defendant Faulkner engaged in excessive force. Thus, plaintiff is unable to establish a constitutional violation, and defendant Faulkner is entitled to qualified immunity for plaintiff's excessive force claim.

To the extent plaintiff contends that the 30 minute delay in permitting him to decontaminate following the pepper-spray incident violated his constitutional rights, plaintiff's claim lacks merit. The record reflects that plaintiff was sprayed with pepper-spray immediately prior to being transported to the Vance County Jail, and that he was permitted to decontaminate at the jail. See

8

Williams, 77 F.3d at 764 n.4 ("[T]he fact that prisoners were permitted to wash off mace shortly after its application has been a significant factor in upholding the use of mace.") Plaintiff also has not produced any evidence that he suffered any injury as a result of the alleged incident, nor is there any evidence plaintiff asked to decontaminate. Finally, there is no evidence that the delay in decontamination was the result any intent to be malicious or sadistic, or to cause plaintiff harm.[1] Thus, plaintiff has not established a Fourteenth Amendment claim with respect to the pepper-spray decontamination.

      b.      Respondeat Superior

Plaintiff's claims against the Vance County Board of Commissioners and defendant White are based upon a theory of supervisor liability. However, because the court has determined that defendant Faulkner did not violate his Constitutional rights, the Vance County Board of Commissioners and defendant White[2] are entitled to summary judgment on plaintiff's supervisor liability claim.

---

[1] Plaintiff did not allege that any defendant acted with deliberate indifference to his serious medical needs. However, even if plaintiff had alleged such a claim, he would not be entitled to relief because the record reflects that Faulkner did not intentionally delay or deny plaintiff access to decontamination. Bridges v. Keller, 519 F. App'x 786 (4th Cir. 2013)("[O]fficials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care.") (citing Estelle v. Gamble, 429 U.S. 97, (1995)). Rather, plaintiff was permitted to decontaminate upon his arrival at the Vance County Jail.

[2] Plaintiff's claims against Western Surety appears to derive from his assertion that he can collect on White's bond in his capacity as sheriff pursuant to N.C. Gen. Stat. § 58-76-5. A finding for White, therefore, disposes of plaintiff's claim against Western Surety. See Jones v. Grimes, 118 F. App'x 696, 698 n.1. (4th Cir. 2004).

c.	Supplemental Jurisdiction

To the extent plaintiff alleges any negligence-related state law claims, including those against the sheriff's official bond, the court declines to exercise jurisdiction over such claims. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 F. App'x 141 (4th Cir. 2003) . The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.[3]

---

[3] Pursuant to 28 U.S.C. § 1367(d), the state statute of limitations period shall be tolled for a period of at least thirty (30) days after dismissal. Estate of Manook v. Research Triangle Institute, Intern, No. 5:10-CV-72-D, 5:10-CV-73-D, 2010 WL 3199874, at *5 (E.D.N.C. Aug. 12, 2010); Coleman v. Smith, No. 3:08-3675-JFA, 2010 WL 569662 at *4 n.3 (D.S.C. Feb. 11, 2010); Futick v. Mills, No. 4:08-1749-CMC-TER, 2008 WL 5378266, at *1 (D.S.C. Dec. 24, 2008); but see, Katema v. Midwest Stamping Co., 180 Fed. Appx. 427, 428 (4th Cir. 2006) (finding that the district court abused its discretion in declining to exercise its supplemental jurisdiction under § 1367 because plaintiff's state law claims would be time-barred in state court and because the court had diversity jurisdiction over plaintiff's claim).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE 62) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 26th day of January, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge